UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff(s), ) ) vs. ) ) ABERCROMBIE & FITCH STORES, INC., ) et al., ) ) Defendant(s). ) | Case No. 4:08CV1470 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Exclude Expert Testimony and Expert Reports of Dr. Erich Joachimsthaler and Dr. Kathleen Lundquist, filed July 31, 2009. (Doc. No. 22). The matter is fully briefed and ready for disposition.

## BACKGROUND

On November 26, 2006, Lakettra Bennett ("Bennett") was hired by Defendants to work as a sales person or "model" in their Abercrombie & Fitch store in Fairview Heights, Illinois. (Plaintiff's Memorandum in Support of its Motion to Exclude Defendants' Expert Witnesses ("Plaintiff's Memo in Support"), P. 2). On or about June 5, 2007, Bennett was promoted into a Manager in Training (MIT) position, at Defendants' Hollister store in the St. Louis Galleria. (Id., citing Exh. C, Bennett Dep., PP. 30-33). At the time of her promotion, Bennett adhered to the Hollister "Look Policy," which directs that "associates should [] wear clothes that are similar to the Hollister brand." (Id., quoting Bennett Dep., P. 64). Bennett described the "look" in 2007 as consisting of "ripped-up jeans, a little revealing, sporty, California beach style, laid back," and further described the length of skirts

and dresses sold by Hollister at that time as falling just below the buttocks. (Id., quoting Bennett Dep., PP. 63, 86).

According to Plaintiff, on September 16, 2007, while attending an Apostolic church service, Bennett had a religious experience, which she describes as having received the Holy Ghost. (Plaintiff's Memo in Support, P. 2). Bennett thereafter turned her life over to God. (Id., citing Bennett Dep., P. 66). On or about September 18, 2007, Bennett shared her religious experience with Store Manager Jamie Mateer ("Mateer"), and informed Mateer that observance of the Apostolic faith forbade her from wearing pants or skirts that fell above the knee. (Id., citing Bennett Dep., PP. 87-88). Plaintiff alleges Defendants made no reasonable effort to accommodate Bennett's request, but instead informed Bennett her choices were to wear pants or skirts that fell above the knee, or resign from her position. (Id., PP. 2-3). Bennett submitted her notice of resignation, but continued to work at the Hollister store until on or about October 15, 2007. (Id., P. 3, citing Bennett Dep. Exh. 1). During this time period Bennett wore skirts or dresses that fell at or below her knees, and performed her job duties without any customer complaints regarding her skirt length. (Id., citing Exh. E, Mateer Dep., PP. 72-74).

Plaintiff Equal Employment Opportunity Commission filed this lawsuit on Bennett's behalf on September 25, 2008. (Doc. No. 1). In its Complaint, Plaintiff alleges Defendants violated the religious accommodation requirement of Title VII of the Civil Rights Act of 1964, by making no effort reasonably to accommodate Bennett's request to wear longer skirts in observance of her religious beliefs. (Compl., ¶ 7).

In support of their defense of this case, Defendants seek to introduce the testimony of two expert witnesses, Dr. Kathleen Lundquist and Dr. Erich Joachimsthaler. If permitted, Dr. Lundquist will offer the opinion that adherence to and enforcement of the Look Policy is an essential function

of the MIT position. (Memorandum in Opposition to Plaintiff's Motion to Exclude Defendants' Expert Witnesses ("Defendants' Opp."), P. 2). Further, if permitted Dr. Joachimsthaler will offer his opinion as to the role the Look Policy plays in Hollister's business, and how deviations from the Look Policy would have a negative impact on Hollister's brand. (Id., P. 3). In its Motion to Exclude, Plaintiff maintains Drs. Lundquist and Joachimsthaler's opinions are inadmissible under both the Federal Rules of Evidence and the Supreme Court's ruling in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

## DISCUSSION

### I.  Standard For Daubert Motions

Under Eighth Circuit law, "[d]ecisions concerning the admission of expert testimony lie within the broad discretion of the trial court." Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003) (internal quotations and citation omitted). As a preliminary matter, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citation omitted). The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides in part as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Id. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and "[t]he rule clearly is one of admissibility rather than exclusion." Lauzon, 270 F.3d at 686 (internal quotations and citations omitted).

Pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., the seminal case regarding expert opinion testimony, "district courts are to perform a 'gatekeeping' function and insure that proffered expert testimony is both relevant and reliable." Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir.

1997) (citations omitted), <u>cert. denied</u>, 523 U.S. 1004 (1998); <u>see also</u> <u>Daubert</u>, 509 U.S. at 592-93. Thus, in order to be admissible under Rule 702, the proposed expert testimony must meet the following three prerequisites:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevance. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

<u>Lauzon</u>, 270 F.3d at 686 (internal quotations and citations omitted).

## II. Proffered Opinions

### A. Lundquist Opinion

In its motion, Plaintiff first asserts Dr. Lundquist's testimony must be excluded, because it is not relevant to any issues to be decided in this lawsuit. (Plaintiff's Memo in Support, PP. 3-7). According to Plaintiff, the issues are (1) whether Plaintiff successfully can establish a prima facie case of religious discrimination under Title VII, and (2) whether Defendants nevertheless can avoid liability by showing either that they reasonably attempted to accommodate Bennett's religious beliefs, or that accommodating her request to wear skirts falling at or below her knees would have imposed an undue hardship on the conduct of Defendants' business. (<u>Id.</u>, P. 5).

In order to establish a prima facie case of religious discrimination under Title VII, Plaintiff must show that Bennett had a bona fide religious belief that conflicted with an employment requirement; that Bennett informed Defendants of this belief; and that Bennett was disciplined for failing to comply with the conflicting requirement of employment. <u>Jones v. TEK Industries, Inc.</u>, 319 F.3d 355, 359 (8th Cir. 2003) (citations omitted). The Court assumes for purposes of the instant motion that Plaintiff successfully has established its prima facie case. The burden thus shifts to Defendants, who "must provide a reasonable accommodation to an employee's religion, unless the

employer demonstrates that he is unable to reasonably accommodate to an employee's...religious observance or practice without undue hardship on the conduct of the employer's business." E.E.O.C. v. Chemsico, Inc., 216 F.Supp.2d 940, 949 (E.D. Mo. 2002) (internal quotations and citation omitted). See also Brown v. Polk County, Iowa, 61 F.3d 650, 654 (8th Cir. 1995), cert. denied, 516 U.S. 1158 (1996) (because Defendants made no attempt to accommodate Plaintiff's religious activities, they can prevail only by demonstrating that allowing the activities could not be accomplished without undue hardship).

In the instant case, Defendants seek to offer the opinion of Dr. Lundquist to the effect that, "it is critical to the job of MIT at Hollister to maintain an appearance and sense of style consistent with the brand." (Lundquist Report, attached to Plaintiff's motion as Exh. B, P. 10, ¶ 24). In its motion, Plaintiff challenges neither Dr. Lundquist's qualifications as an expert, nor the methodology she employed to reach her conclusion. Rather, as stated above Plaintiff posits only that Dr. Lundquist's opinion that adherence to the Look Policy is "critically important" to the performance of the MIT position, and constitutes "an essential function" of the job, is not relevant to any issue in this lawsuit. (Plaintiff's Memo in Support, P. 4).

Upon consideration, the Court disagrees. As stated above, in order to escape liability Defendants must show they made a good faith effort to accommodate Bennett's religious belief, or that employing such an accommodation would have worked an undue hardship on Defendants and their business. Chemsico, 216 F.Supp.2d at 949.

> To require [an employer] to bear more than a *de minimis* cost....is an undue hardship....*De minimis* cost, moreover, entails not only monetary concerns, but also the employer's burden in conducting its business.

Brown, 61 F.3d at 655 (internal quotations and citations omitted). In the instant case, the Court finds Dr. Lundquist's testimony that adherence to the Look Policy constitutes an essential function of the

MIT position goes directly to the question of whether accommodating Bennett's request to be exempted from the Policy would constitute an undue burden on the part of Defendants. The testimony thus is relevant, and so Plaintiff's Motion to Exclude the Expert Testimony and Report of Dr. Kathleen Lundquist must be denied.

B. **Joachimsthaler Opinion**

Plaintiff next asserts the opinions of Dr. Joachimsthaler must be excluded because they are wildly speculative, not supported by scientific research, and only loosely tied to the facts in this case. (Plaintiff's Memo in Support, PP. 7-14). Plaintiff begins by acknowledging Dr. Joachimsthaler's proposed testimony would go to the issue of undue hardship. (Id., P. 8). Plaintiff continues to assert the testimony is inadmissible, however, because Dr. Joachimsthaler failed to conduct any empirical or survey research to support his opinion regarding the economic impact that allowing Bennett to wear longer skirts would have had on Hollister's business, and further based his assumptions on an incorrect factual scenario, i.e., that Bennett had requested to be allowed to wear ankle-length skirts.[1] (Id., PP. 8-9).

Upon consideration, the Court will deny this portion of Plaintiff's motion to exclude, for two reasons. First, the Court finds the testimony is relevant, as it goes to the alleged harm that would be caused to the Hollister brand by permitting an employee in the MIT position to deviate from the Look Policy. (Defendants' Opp., P. 7). See Brown, 61 F.3d at 655 (to require an employer to bear more than a *de minimis* cost, either in terms of profitability or the employer's burden in conducting its business, constitutes an undue hardship). Second, with respect to the alleged flaws in the underpinnings of Dr. Joachimsthaler's opinions, the Court notes that under Eighth Circuit law, "'[a]s

---

[1] According to Plaintiff, Bennett requested only that she be allowed to wear knee-length skirts. (Plaintiff's Memo in Support, P. 9).

a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 416 (8th Cir. 2005), quoting Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002) (citation omitted). The expert's opinion thus should be excluded only when it is, "so fundamentally unreliable that it can offer no assistance to the jury." Harrington v. Sunbeam Products, Inc., 2009 WL 701994 at *4 (E.D. Mo. Mar. 13, 2009) (internal quotations and citation omitted). In the instant case, the Court concludes Dr. Joachimsthaler's testimony is sufficiently reliable to assist the jury's determination of a disputed issue, and Plaintiff's assertions concerning flaws in his methodology and/or assumptions, "are proper subjects for its own expert testimony and for thorough cross-examination before the trier of fact." Harrington, 2009 WL 701994 at *4. See also Lauzon, 270 F.3d at 695 ("It is far better where, in the mind of the district court, there exists a close case on relevancy of the expert testimony in light of the plaintiff's testimony to allow the expert opinion...").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Exclude Expert Testimony and Expert Reports of Dr. Erich Joachimsthaler and Dr. Kathleen Lundquist (Doc. No. 22) is **DENIED**.

Dated this 26th day of October, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE