UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) Case No. 4:08CV1470 JCH ) |
| ABERCROMBIE & FITCH STORES, INC., et al., | ) ) ) |
| Defendant(s). | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed July 31, 2009. (Doc. No. 21). The matter is fully briefed and ready for disposition.

## BACKGROUND

On November 26, 2006, Lakettra Bennett ("Bennett") was hired by Defendants to work as a sales person or "model" in their Abercrombie & Fitch store in Fairview Heights, Illinois. (Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment ("Defendants' Facts"), ¶ 12, citing Bennett Dep., attached to Defendants' Motion for Summary Judgment as Exh. C, P. 28, Exh. 1). In early June, 2007, Bennett was promoted into a Manager in Training (MIT) position, and transferred to Defendants' Hollister store in the Galleria Mall in St. Louis. (Id., ¶ 13, citing Bennett Dep., PP. 32-33, Exh. 1). At the time of her promotion, Bennett adhered to the Hollister "Look Policy," which directs that associates are expected to wear clothes that are similar to the Hollister brand.[1] (Id., ¶ 8, citing Bennett Dep., PP. 46-47, 64-65; Abel

---

[1] The Look Policy is contained within the Hollister employee handbook. (Defendants' Facts, ¶ 11, citing Bennett Dep., P. 46, Exh. 6).

Dep., attached to Defendants' Motion for Summary Judgment as Exh. E, P. 35; Mateer Dep., attached to Defendants' Motion for Summary Judgment as Exh. D, P. 20). During the time Bennett was employed, the Hollister style consisted of "ripped-up jeans, a little revealing, sporty, California beach style, laid back," and was sexy, form-fitting, and designed to show off body contours and draw attention to the wearer. (Id., ¶ 3, citing Bennett Dep., PP. 59-64, Exh. 10). Bennett described the length of skirts and dresses sold by Hollister during the relevant time frame as falling just below the buttocks. (Id., citing Bennett Dep., PP. 86-87).

While attending a church service on September 16, 2007, Bennett converted to the Apostolic religion, and began to adhere to its regulations regarding dress. (Defendants' Facts, ¶ 18, citing Bennett Dep., P. 68). Accordingly, as of September 16, 2007, Bennett could wear only skirts that fell below the knee, and shirts with sleeves that came to the forearm. (Id., ¶ 21, citing Bennett Dep., PP. 76-77, 79). Bennett was not permitted to wear low-necked shirts, or those that revealed any cleavage. (Id.).

On September 18, 2007, Bennett arrived to work at Hollister wearing an ankle-length denim skirt. (Defendants' Facts, ¶ 22, citing Bennett Dep., P. 85). The garment admittedly was inconsistent with the Hollister style, as until that time Hollister had never sold ankle-length skirts of the type worn by Bennett.[2] (Id., ¶ 23, citing Bennett Dep., PP. 85-86; Mateer Dep., P. 21; Abel Dep., P. 36). Bennett explained to Store Manager Jamie Mateer that she was wearing the long skirt in order to adhere to her religious beliefs. (Id., ¶¶ 15, 25, citing Bennett Dep., PP. 87-88).

Bennett had several discussions with Mateer, District Manager Leslie Abel, and Human Resources Manager Erin Chura, and they eventually offered that Bennett could: wear jeans instead

---

[2] Beginning in May, 2009, Hollister began selling dresses that fall to the ankles. (Defendants' Facts, P. 7 n. 9).

of skirts; wear short skirts with leggings underneath to cover her legs; or look in other stores for skirts that would both meet her religious requirements and be consistent with the Hollister style. (Defendants' Facts, ¶¶ 15, 27, citing Bennett Dep., P. 91; Abel Dep., P. 40; Mateer Dep., P. 62). After consultation with her father, Bennett responded that none of the options was acceptable, and reiterated her request that she be permitted to wear skirts that fell at or below the knee.[3] (Id., ¶ 28, citing Bennett Dep., P. 101). Defendants refused, and Bennett was given two weeks' time to decide whether to continue her employment with Hollister and comply with the Look Policy, or resign. (Id., ¶ 32, citing Mateer Dep., P. 67). Bennett ultimately elected to submit her notice of resignation. (Id., ¶ 33, citing Bennett Dep., P. 123).

Plaintiff Equal Employment Opportunity Commission filed this lawsuit on Bennett's behalf on September 25, 2008. (Doc. No. 1). In its Complaint, Plaintiff alleges Defendants violated the religious accommodation requirement of Title VII of the Civil Rights Act of 1964, by making no effort reasonably to accommodate Bennett's request to wear longer skirts in observance of her religious beliefs. (Compl., ¶ 7). As stated above, Defendants filed the instant Motion for Summary Judgment on July 31, 2009, asserting there exist no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. (Doc. No. 21).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[3] Bennett conceded that during the time of her employment, Hollister did not sell skirts that were consistent with her Apostolic faith. (Defendants' Facts, ¶¶ 24, 31, citing Bennett Dep., PP. 75-76, 81-83, 84, 113-114, 120). Her requested accommodation thus consisted of an exemption from the Look Policy. (Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Memo in Support"), P. 2).

law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## **DISCUSSION**

Title VII makes it unlawful, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's....religion." 42 U.S.C. § 2000e-2(a)(1). The statute broadly defines religion as, "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's...religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

In order to establish a prima facie case of religious discrimination under Title VII, Plaintiff must show that Bennett had a bona fide religious belief that conflicted with an employment requirement; that Bennett informed Defendants of this belief; and that Bennett was disciplined for failing to comply with the conflicting requirement of employment. Jones v. TEK Industries, Inc., 319 F.3d 355, 359 (8th Cir. 2003) (citations omitted). If Plaintiff succeeds in establishing its prima facie case, Defendants, "must provide a reasonable accommodation to an employee's religion, unless the employer demonstrates that he is unable to reasonably accommodate to an employee's...religious observance or practice without undue hardship on the conduct of the employer's business." E.E.O.C. v. Chemsico, Inc., 216 F.Supp.2d 940, 949 (E.D. Mo. 2002) (internal quotations and citation omitted). See also Brown v. Polk County, Iowa, 61 F.3d 650, 654 (8th Cir. 1995), cert. denied, 516 U.S. 1158 (1996) (because Defendants made no attempt to accommodate Plaintiff's religious activities, they can prevail only by demonstrating that allowing the activities could not be accomplished without undue hardship).

In the instant case, Defendants concede a genuine issue of material fact remains with respect to whether Bennett possessed a sincere religious belief precluding compliance with the Look Policy. (Defendants' Memo in Support, P. 4). The Court thus turns to a discussion of whether Defendants made a good faith effort reasonably to accommodate Bennett's religious belief, and/or whether granting Bennett's request for a blanket exemption from the Look Policy would have caused Defendants undue hardship.

**I.   Reasonable Accommodation**

As stated above, under Title VII an employer must "reasonably accommodate" an employee's religious beliefs, unless doing so would cause an "undue hardship." 42 U.S.C. § 2000e(j). Title VII does not define what constitutes a reasonable accommodation. E.E.O.C. v. Aldi, Inc., 2008 WL

859249 at *7 (W.D. Pa. Mar. 28, 2008). Rather, "[t]he determination of when the reasonable accommodation requirement has been met....must be made in the particular factual context of each case." Chemsico, 216 F.Supp.2d at 952 (internal quotations and citations omitted). Further, under Eighth Circuit law, while a reasonable accommodation need not always eliminate the religion-work conflict, "there may be many situations in which the only reasonable accommodation is to eliminate the religious conflict altogether." Sturgill v. United Parcel Service, Inc., 512 F.3d 1024, 1032-1033 (8th Cir. 2008). Thus, "in close cases, [whether the only reasonable accommodation is to eliminate the religious conflict altogether] is a question for the jury because it turns on fact-intensive issues such as work demands, the strength and nature of the employee's religious conviction,...and the contractual rights and workplace attitudes of co-workers." Id. at 1033.

In the instant case, it is undisputed that upon learning of Bennett's alleged religious conflict, Defendants immediately engaged in an interactive process designed to understand and attempt to accommodate Bennett's religious beliefs. Upon consideration, however, the Court finds the question of whether any of Defendants' three proposed solutions, i.e., permitting Bennett to wear jeans instead of skirts, to wear short skirts with leggings underneath to cover her legs, or to look in other stores for skirts that would both meet her religious requirements and be consistent with the Hollister style[4], constituted a *reasonable* accommodation, remains an issue of fact for the jury. In other words, the Court finds a genuine issue remains as to whether Defendants' offers to compromise effectively eliminated Bennett's religious conflict, sufficient to trigger her, "correlative duty to make a good faith attempt to satisfy her needs through means offered by the employer." Mann v. Frank, 795 F.Supp. 1438, 1450 (W.D. Mo. 1992) (citations omitted). See also E.E.O.C. v. Alamo Rent-A-Car, LLC,

---

[4] While the Court finds it troubling that Bennett failed to investigate the third option before rejecting it as inconsistent with her religious needs, it declines to grant judgment as a matter of law on this basis.

432 F.Supp.2d 1006, 1013 (D. Ariz. 2006) (Alamo's proposal failed to accommodate the religious conflict, and thus was not a reasonable accommodation). This portion of Defendants' Motion for Summary Judgment must therefore be denied.

## II. **Undue Hardship**

In their Motion for Summary Judgment, Defendants next assert they are entitled to judgment as a matter of law, because the accommodation sought by Bennett would have posed an undue hardship. (Defendants' Memo in Support, PP. 7-14). As stated above, in order to escape liability Defendants must show they made a good faith effort to accommodate Bennett's religious belief, or that employing such an accommodation would have worked an undue hardship on Defendants and their business. Chemsico, 216 F.Supp.2d at 952. Undue hardship is not defined within the language of Title VII, and thus "the circumstances under which a particular accommodation may cause undue hardship, must be made in the particular factual context of each case." Id. (internal quotations and citations omitted).

> To require [an employer] to bear more than a *de minimis* cost....is an undue hardship....*De minimis* cost, moreover, entails not only monetary concerns, but also the employer's burden in conducting its business.

Brown, 61 F.3d at 655 (internal quotations and citations omitted).

In support of their claim of undue hardship, Defendants contend that exempting Bennett from the Look Policy would require Hollister to eliminate an essential function of her MIT position, interfere with enforcement of the Policy, and damage the Hollister brand and thereby damage the Company. (Defendants' Memo in Support, PP. 8-14). Defendants support these assertions with citations to both expert[5] and lay testimony. (Id.). Upon consideration of the record before it,

---

[5] In a separate Memorandum and Order entered this day, the Court denied Plaintiff's Daubert Motion to Exclude Defendants' Experts. The Court's ruling does not, however, preclude Plaintiff from attacking the relevance and/or reliability of such expert testimony at trial.

however, the Court concludes that Defendants have failed to meet their burden of demonstrating that, as a matter of law, they would have suffered more than a *de minimis* hardship had they further accommodated Bennett. Chemsico, 216 F.Supp.2d at 954. See also Brown, 61 F.3d at 655 (internal quotations and citations omitted) ("Any hardship asserted, furthermore, must be real rather than speculative, merely conceivable, or hypothetical."). The question thus remains one for the jury, and so this portion of Defendants' Motion for Summary Judgment must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 21) is **DENIED**.

Dated this 26th day of October, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE